## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JOHN SAFFIOTI,

       Plaintiff,

v.                              Case No:  2:17-cv-143-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

### REPORT AND RECOMMENDATION[1]

Plaintiff John Saffioti seeks judicial review of the denial of his claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the Joint Memorandum (Doc. 27) and the applicable law.   The Court respectfully recommends the decision of the Commissioner be reversed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.   In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

## I.    Issues on Appeal[2]

Plaintiff raises four issues on appeal: (1) whether the administrative law judge ("ALJ") committed reversible error by failing to consider and weigh the medical opinions of one-time examiner Michael Hearns, M.D.; (2) whether the ALJ failed to properly consider Plaintiff's mental impairments; (3) whether the ALJ committed reversible error by failing to resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and (4) whether substantial evidence supports the number of jobs provided by the VE for the jobs identified at step five.

## II.    Summary of the ALJ's Decision

On July 12, 2013,[3] Plaintiff applied for DIB, alleging his disability began on August 29, 2012 due to back injury, hernia recovery, severe leg pain and depression. *See* Tr. 73-74, 87-88, 174.   Plaintiff's claims were denied initially on February 21, 2014, and upon reconsideration on July 1, 2014.   Tr. 73-85, 87-95.   On August 15, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 113-14.   ALJ Ramon Suris Fernandez held a hearing on September 24, 2015, and on October 7, 2015, the ALJ found Plaintiff was not disabled from August 29, 2012 through the date of the decision.   Tr. 22-30, 36-68.

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] Plaintiff's DIB application indicates he applied for DIB on November 14, 2013, but his disability determination explanations, the ALJ's decision and the Joint Memorandum indicate he filed his initial claim on July 12, 2013.   *See* Tr. 22, 69, 73, 174; Doc. 27 at 1.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 29, 2012.  Tr. 24.  Next, at step two, the ALJ found Plaintiff had these severe impairments: degenerative disc disease, status post lumbar fusion, status post hernia repair and depression.  *Id.*  At step three, the ALJ concluded that through the date of the decision, Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*  The ALJ determined Plaintiff had the RFC to perform a limited range of light work:[4]

> [H]e cannot work with ladders, ropes or scaffolds.   He cannot work with machinery on unprotected heights.   He can occasionally kneel, crawl and crouch.   He can frequently reach overhead with the right upper extremity.   He is limited to simple and routine tasks and short and simple work instructions.

Tr. 25-26.  At step four, the ALJ determined Plaintiff could perform no past relevant work.  Tr. 28.  Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform, identifying the jobs

---

[4] The regulations define light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

of cafeteria attendant, counter attendant and information clerk.   Tr. 29.   The ALJ concluded Plaintiff was not disabled from August 29, 2012 to October 7, 2015, the date of the decision.   Tr. 30.   The Appeals Council denied Plaintiff's request for review on January 13, 2017, and Plaintiff filed a Complaint with this Court.   Tr. 1-3; Doc. 1.   The matter is now ripe for review.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[5]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).   Where the Commissioner's decision is supported by

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and mental impairments.   *See, e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c (effective March 27, 2017), 404.1527.   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a.   *Medical opinions of Dr. Hearns*

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."   *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(c), (e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. § 404.1527(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ

considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004).   Further, the ultimate opinions on whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are reserved exclusively to the Commissioner.   20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

On March 15, 2013, Plaintiff saw Dr. Hearns at Central Medical Services of Westrock for his back pain.   *See* Tr. 407-08; Doc. 27 at 3.   The narrative portions of the report of the visit are almost entirely illegible, but Dr. Hearns checked boxes indicating Plaintiff's prognosis was fair and his disability status was total, and Dr. Hearns listed "TTD"—which the parties agree to mean "temporary total disability"— under "Impairment Findings."   *See* Tr. 407-08; Doc. 27 at 13 n.1, 16.   Under a section labeled "Restrictions," Dr. Hearns checked the boxes for lifting, pushing, pulling, carrying, sitting, standing, walking, climbing, kneeling, bending and repetitive motions.   Tr. 408.   Dr. Hearns also completed an order form for an MRI

and x-rays of Plaintiff's back.   Tr. 409.   On the order form, Dr. Hearns checked boxes for brace and cane in a section labeled "Durable Medical Equipment."   *Id.* The MRI of Plaintiff's back was conducted on March 18, 2013, which indicated Plaintiff had a broad-based disc bulge at L4-5 causing stenosis and disc space narrowing at L5-S1 causing stenosis and crowding the exiting nerve roots.   Tr. 27, 398.   On March 25, 2013, Plaintiff had an initial surgical consultation with Paul Brisson, M.D. regarding his back, and on May 18, 2013, Dr. Brisson requested authorization to perform surgery on Plaintiff's back at L4-L5 and L5-S1.   Tr. 299-303.   On September 24, 2013, Plaintiff underwent an anterior/posterior lumbar fusion at L4-L5 to correct his back issues.   *See* Tr. 304-05.   The ALJ did not state the weight he assigned Dr. Hearns' medical opinions or otherwise reference them in his decision.   *See generally* Tr. 22-30.

Plaintiff argues the ALJ improperly failed to consider and weigh the opinion of Dr. Hearns.   Doc. 27 at 13.   Plaintiff asserts Dr. Hearns' opinion that Plaintiff suffered from total disability is relevant and probative because the Social Security Administration ("SSA") and Worker's Compensation definition of disability are construed similarly.   *Id.*   Plaintiff contends that Dr. Hearns prescribing Plaintiff a back brace and cane supports his medical opinion and contradicts the ALJ's conclusion that Plaintiff could perform light work, noting the ALJ failed to mention in his decision Plaintiff's prescribed cane or back brace.   *Id.* at 14.   Plaintiff posits the ALJ's failure to consider Dr. Hearns' opinion "led to an improper failure to find the Plaintiff disabled under the Medical-Vocational Rule 201.14."   *Id.*

The Commissioner responds that as a one-time examiner, Dr. Hearns' opinion was not entitled to any deference or special consideration. *Id.* at 16.  The Commissioner asserts that to the extent the ALJ failed to discuss and weigh Dr. Hearns' opinion, the error was harmless because the opinion would not impact the ALJ's ultimate decision, Dr. Hearns made no objective examination findings and cited no medical evidence to support his opinions, and Dr. Hearns' opinions did not contradict the ALJ's finding. *Id.* at 16, 18.  The Commissioner contends Dr. Hearns' opinion that Plaintiff was disabled was entitled to no weight or special significance because disability is an issue reserved to the Commissioner. *Id.* at 16. The Commissioner also argues the ALJ was under no obligation to credit Dr. Hearns' conclusory opinion that Plaintiff needed a back brace and cane because no objective examination findings supported the need for the assistive devices or indicating the circumstances in which Plaintiff would require them. *Id.* at 17-18.

The Court recommends the ALJ erred in failing to discuss Dr. Hearns' opinions and the weight he gave them, but the error was harmless.   First, although the ALJ did not expressly discuss Dr. Hearns' opinion or state the weight he gave them, the ALJ's reasoning for discounting Dr. Brisson's March 2013 opinion and Dr. Kemp's opinion also applies to Dr. Hearns' opinions: they were provided prior to Plaintiff's September 2013 back surgery, and the ALJ found the record indicates significant improvement after surgery.[6] *See* Tr. 27-28, 407-08.   Second, many restrictions Dr.

---

[6] Plaintiff did not raise any issue with the ALJ discounting Dr. Brisson's and Dr. Kemp's opinions or with the ALJ's finding that Plaintiff's back improved significantly after his back surgery. *See generally* Doc. 27.   Plaintiff thus waived any such arguments. *See*

Hearns identified are accounted for in Plaintiff's RFC because the ALJ limited Plaintiff's ability to lift, carry, climb, kneel and bend, and Plaintiff has not established he has limitations greater than the ALJ found in his RFC.   *Compare* Tr. 25-26, *with* Tr. 408.

Third, the ALJ did not have to give deference to Dr. Hearns' opinion on Plaintiff's disability as that issue is reserved to the Commissioner; regardless, Dr. Hearns' notes suggest Plaintiff's disability was temporary.   *See* Tr. 408; 42 U.S.C. § 423(d)(1)(A) (defining disability as an inability to work due to a medically determinable impairment that "has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2.   Therefore, the Court recommends any error in failing to state the weight given to Dr. Hearns' opinions was harmless because it would not have affected the ALJ's ultimate decision.   *See* Tr. 408; *Tillman v. Comm'r, Soc. Sec. Adm.*, 559 F. App'x 975, 975 (11th Cir. 2014) ("Ordinarily, an ALJ's failure to explain the particular weight given to the different medical opinions provided is reversible error. However, when the ALJ's error did not affect its ultimate findings, the error is harmless[.]" (citations omitted)); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.")

---

*Access Now, Inc.*, 385 F.3d at 1330.

The Court also recommends the ALJ did not err in failing to discuss the references to a brace and cane on Dr. Hearns' diagnostic testing order form.   SSR 96-9p states that to determine if an assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."   SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).   Contrary to Plaintiff's suggestion, there is no indication Dr. Hearns prescribed a brace or cane for Plaintiff.   *See* Tr. 407-09.   Dr. Hearns described no circumstances in which a brace or cane would be needed, and there is no other evidence in the record suggesting Plaintiff used or required a brace or cane.   *See* Tr. 409.   Therefore, the Court recommends the ALJ did not commit reversible error by failing to discuss Dr. Hearns' opinions or his reference to a brace and cane.

### b.  *Mental impairments*

In evaluating alleged mental impairments, the ALJ must use the "'special technique' dictated by the [Psychiatric Review Technique ("PRT") Form]" or comply with the form's mode of analysis, which is generally called the "paragraph B" criteria.[7] *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a(a)).   "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of

---

[7] 20 C.F.R. Part 404, Subpart P, Appendix 1.

decompensation.'"   *Id.* (citing 20 C.F.R. § 404.1520a(c)(3-4)).   The ALJ must incorporate the results of the PRT into his findings and conclusions.   *Id.* (citing 20 C.F.R. § 404.1520a(e)(2)).

Here, the ALJ found Plaintiff's depression to be a severe impairment.   Tr. 24. In evaluating whether Plaintiff's mental impairments met listings 12.04 and 12.06, the ALJ considered whether the paragraph B criteria were satisfied, finding:

> The record does not support any continuous affective issues.   His alleged impairments were due to his pain.   His affective limitations are only assigned due to the extent of his pain and hearing allegations.   As such, the record suggests the claimant does not have more than a mild limitation in daily living, mild limitation in social functioning and moderate limitation in concentration, persistence or pace.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

Tr. 25 (internal citations omitted).

Plaintiff argues the ALJ improperly considered Plaintiff's mental impairments, incorrectly concluding he had no continuous affective issues despite mental health diagnoses in the record.   Doc. 27 at 19.   Plaintiff claims the ALJ failed to complete the PRT required by the Regulations because he did not mention Plaintiff's depression and anxiety in his decision.   *Id.* at 20.   Plaintiff asserts the notes from Plaintiff's evaluation with Cheryl Kasprzak, Psy.D. indicate Plaintiff had "recurrent" depression and greater-than-mild social limitations.   *Id.* at 20-21.

The Commissioner responds the ALJ properly considered Plaintiff's mental condition and incorporated a PRT analysis into his decision.   *Id.* at 22.   The Commissioner argues substantial evidence supports the ALJ's determination Plaintiff did not have "continuous affective issues resulting in disability," referencing Plaintiff's lack of consistent treatment for any mental conditions.   *Id.* at 22-23 (internal quotation marks omitted) (citing Tr. 25).   The Commissioner asserts Dr. Kasprzak's records do not indicate she assessed any specific limitations on Plaintiff's functioning because of his mental condition, noting that Dr. Kasprzak's objective findings indicate Plaintiff had no significant mental impairments.   *Id.* at 23-24. The Commissioner also contends Plaintiff's hearing testimony contradicts any argument that Plaintiff has significant social limitations.   *Id.* at 25.

The Court recommends substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments.   First, contrary to Plaintiff's arguments, the ALJ mentioned Plaintiff's depression and incorporated a PRT analysis into his decision. As quoted above, the ALJ evaluated the impact of Plaintiff's mental impairments on the four functional areas—activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation—and rated them on the four-point scale.   *See* Tr. 25.   The ALJ noted the RFC assessment reflected the degree of limitation the ALJ found in the "paragraph B" analysis, as evidenced by the ALJ limiting Plaintiff to simple and routine tasks and short and simple work instructions. Tr. 25-26.   Indeed, the ALJ noted that although the record did not support affective disorders, the claimant's symptoms and reports suggested some affective limitations,

and thus, giving Plaintiff the benefit of the doubt, the ALJ limited Plaintiff to simple work.   *See* Tr. 28 (citing Tr. 299).

Second, diagnoses of medical conditions alone cannot entitle Plaintiff to Social Security benefits; Plaintiff had to establish that his mental impairments affected his ability to perform basic work tasks.   *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).   Here, despite Dr. Kasprzak diagnosing Plaintiff with recurrent major depressive disorder, the record supports Plaintiff was no more limited than contemplated in his RFC determination.   *See* Tr. 347.   During her mental status examination of Plaintiff, Dr. Kasprzak found Plaintiff's mood and affect to be anxious and his recent memory to be outside normal limits, but she also found his thought content and process, speech quality, intellectual ability, abstract reasoning, immediate memory, remote memory attention and concentration to be within normal limits or average.   *Id.* Plaintiff told Dr. Kasprzak he could shower and dress daily without assistance, cook and feed himself simple meals, clean and do laundry daily, and grocery shop weekly. *Id.*   He also said he watches TV, goes on the internet and takes walks daily.   *Id.*

During the hearing, Plaintiff testified he socializes with one of his neighbors daily, and one of his other neighbors helps him with chores.   Tr. 54, 57-58.   His testimony also suggested his anxiety is better if there are people around him.   Tr. 55-56.   He was temporarily treated for depression/anxiety following his work injury on August 29, 2012, but he was weaned off his prescribed medication.   *See* Tr. 55, 62, 224.   As the Commissioner points out, Plaintiff has not received mental health

treatment since, nor has he been referred to a mental specialist.   Doc. 17 at 22-23. Finally, although Plaintiff points out that he reported feeling depressed or anxious, suffering from panic attacks, and alienating himself from others on various occasions, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one.   *See* Tr. 54-56; 302, 345; *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.   For these reasons, the Court recommends substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments.

### c.  *Step five determination*

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence there is other work available in significant numbers in the national economy that the claimant can perform given his RFC. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove he cannot perform the jobs identified by the Commissioner.   *See id.* (citing *Hale*, 831 F.2d at 1011); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

Here, Plaintiff argues (1) the ALJ erred because the jobs the VE identified do not comply with Plaintiff's RFC; and (2) substantial evidence does not support the job

numbers the VE identified.   Doc. 27 at 26-31, 35-38.   The Court recommends substantial evidence does not support the ALJ's step five determination.

i.   The identified jobs' compliance with Plaintiff's RFC

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work."   20 C.F.R. § 404.1520(a)(4)(v).   In making this determination, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   The ALJ may consider the DOT, which is published by the Department of Labor.   SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991).   The ALJ also may consider the testimony of a VE as a source of occupational evidence.   SSR 00-4p, 2000 WL 1898704.   "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (quoting *Jones*, 190 F.3d at 1229).   The ALJ has an affirmative duty to "ask about any possible conflict between [the VE's testimony] and information provided in the DOT."   SSR 00-4p, 2000 WL 1898704.

Here, at the hearing, the VE testified there would be a representative number of jobs accommodating the hypothetical person the ALJ presented with Plaintiff's ultimate RFC determination—including a limitation to "simple and routine tasks and short and simple instructions"—and identified the jobs of cafeteria attendant, counter

attendant and information clerk.   Tr. 26, 64-65.   The ALJ relied on the VE's testimony to find jobs exist in significant numbers in the national economy Plaintiff can perform based on his age, education, work experience and RFC, namely the three jobs identified by the VE.   Tr. 28-29.   The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE answered in the affirmative.   Tr. 65.   In his decision, the ALJ found the VE's testimony was consistent with the DOT as required under SSR 00-4p.   Tr. 29.

Plaintiff argues the VE's testimony that Plaintiff could perform the identified jobs of information clerk, cafeteria attendant and counter clerk conflicted with the DOT.   Doc. 27 at 26, 31-32.   Plaintiff asserts that although the VE testified the information clerk position had a specific vocational preparation ("SVP") of 2, the DOT indicates the position is a semi-skilled job with an SVP of 4.   *Id.* at 30.   Plaintiff also contends the jobs of cafeteria attendant and counter clerk have a reasoning level of 2, which is inconsistent with Plaintiff's RFC limitation to "simple and routine tasks and short and simple work instructions."   *Id.* at 26, 30 (citing Tr. 26).

The Commissioner responds that because the ALJ asked the VE if his testimony was consistent with the DOT, found the VE's testimony consistent with the DOT and gave Plaintiff's counsel the opportunity to cross-examine the VE, the ALJ had "no duty under SSR 00-4p to further interrogate the VE or resolve a conflict." *Id.* at 31-32, 34-35.   The Commissioner also argues there are multiple jobs described as "information clerk" in the DOT, and the VE clearly was referring to the one with an SVP of 2, not the one with an SVP of 4.   *Id.* at 32-33.   The Commissioner further

contends the ALJ was entitled to rely on the VE's testimony that Plaintiff could perform the identified jobs with a reasoning level of 2 because the Eleventh Circuit has found no apparent inconsistency between a reasoning level of 2 and an RFC limitation to simple, unskilled work.  *Id.* at 34 (citing *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 974-75 (11th Cir. 2012); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011)).  In light of recent Eleventh Circuit case law, the Court recommends the ALJ erred in failing to resolve the apparent conflict between the VE's testimony and the DOT.

The cafeteria attendant and counter attendant jobs have a reasoning level of 2, which requires an ability to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

DOT, 311.677-010, 1991 WL 672694; DOT 249.366-010, 1991 WL 672323.  The information clerk position the VE apparently intended to identify[8]—as acknowledged by the Commissioner—has a reasoning level of 4, which requires an ability to:

> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.  Examples of rational systems are: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation.

---

[8]  The information clerk DOT code number of 237.637-010 that the VE identified does not exist.  *See* Tr. 29, 65; Doc. 27 at 30, 32-33.  Although Plaintiff suggests the VE intended to identify the job of information clerk (clerical) with an SVP of 4 at DOT code 237.367-022, it appears more likely the VE intended to identify the job of information clerk (motor transport) because it has an SVP of 2, as the VE testified, and its DOT code digits are closer to those identified by the VE.  *Compare* Tr. 29, 65, *with* DOT, 237.367-018, 1991 WL 672187; *see* Doc. 27 at 33.

DOT, 237.367-018, 1991 WL 672187.

The Eleventh Circuit recently clarified that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT] and to resolve it." *Washington*, 906 F.3d at 1362; *see* SSR 00-4p, 2000 WL 1898704.   The Eleventh Circuit explained:

> The ALJ must ask the VE whether there is a conflict *and* must ask for an explanation if there appears to be a conflict.   Whenever a conflict is "apparent," the ALJ must also ask the VE about it.   Moreover, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert."   During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them.

*Washington*, 906 F.3d at 1362 (emphasis and alterations in original) (internal citations omitted) (citing *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015)).   By failing to identify and resolve apparent conflicts, an ALJ breaches "his duty to fully develop the record and offer a reasonable resolution of [the] claim."   *Id.* at 1366.   A conflict is "apparent" if it "seem[s] real or true, but not necessarily so" to an ALJ with ready access to and close familiarity with the DOT.   *Id.* (quoting *Pearson*, 810 F.3d at 209).

In prior cases finding no apparent conflict between a reasoning level of up to 3 and a limitation to simple tasks, the courts either evaluated post hoc the particular requirements of the identified jobs—now impermissible under *Washington*—or relied on now-defunct legal propositions.   *See, e.g.*, *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) (noting VE testimony trumps the DOT if there are inconsistencies and finding reasoning levels of 2 or 3 consistent with simple work

based on post-hoc evaluation of specific jobs identified by VE); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (finding ALJ did not err in relying on VE's testimony because VE testified there were no inconsistencies between his opinion and the DOT, the plaintiff did not offer evidence controverting the VE's testimony, and VE testimony trumps the DOT where there is an inconsistency); *Hurtado*, 425 F. App'x at 795-96 (finding no apparent conflict between the VE's testimony and DOT based on post-hoc evaluation of the plaintiff's skills compared to the identified positions and noting that regardless of inconsistencies, VE testimony "trump[s]" the DOT).   In light of *Washington*, however, it is now clear the ALJ cannot blindly rely on the VE's testimony.   The ALJ has the *affirmative duty* to take notice of apparent conflicts between the VE's testimony and the DOT and resolve them, regardless of whether the VE or plaintiff fail to identify any inconsistencies.   *See Washington*, 906 F.3d at 1362.   *Washington* also emphasizes failing to acknowledge such conflict is not harmless if the reviewing court cannot "conclude the ALJ adequately resolved any possible discrepancy in spite of his failure to even acknowledge the conflict," making it inappropriate for courts to analyze the identified jobs post hoc to resolve inconsistencies the ALJ failed to identify or resolve.   *See id.* at 1366.

Here, it is clear that a job with a reasoning level of 4 would conflict with a limitation to "simple and routine tasks and short and simple work instructions."   *See* Tr. 26; DOT, 237.367-018, 1991 WL 672187.   Further, it "seem[s] real or true, but not necessarily so" that a job with a reasoning level of 2 requiring someone to carry out "detailed" instructions would conflict with such a limitation.   *See* Tr. 26;

*Washington*, 906 F.3d at 1362 (quoting *Pearson*, 810 F.3d at 209); DOT, 311.677-010, 1991 WL 672694; DOT, 249.366-010, 1991 WL 672323.   Therefore, the Court recommends the ALJ erred by failing to identify and resolve the apparent conflict between the VE's testimony and the DOT.   Further, because the Court cannot "conclude the ALJ adequately resolved any possible discrepancy in spite of his failure to even acknowledge the conflict," the Court recommends the error was not harmless. *See Washington*, 906 F.3d at 1366.

ii.   Number of jobs in the national economy

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, specific job vacancies exist, or Plaintiff would be hired if he applied.   *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citing 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a)-(c)).   On what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule.   As the court noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Id.* at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

Plaintiff argues the ALJ's decision was unsupported by substantial evidence because the job quantities the VE provided failed to adequately account for part-time jobs and jobs outside Plaintiff's RFC.   *See* Doc. 27 at 35.   Plaintiff asserts the VE

testified he obtained his job numbers solely from the Bureau of Labor Statistics and not from Job Browser Pro, but the numbers in Job Browser Pro for particular OES groups made up of a variety of DOT codes are "more or less consistent with the numbers the VE provided at the hearing." *Id.* at 36. Plaintiff claims these numbers are unreliable because Job Browser Pro indicates large percentages of the identified jobs are part-time or exceed Plaintiff's RFC, and the BLS does not break down job numbers by limitation. *Id.* at 37. Plaintiff also asserts the VE's failure to correctly identify the information clerk position makes it impossible to analyze the correctness of the VE testimony. *Id.* at 37-38.

The Commissioner responds the VE testified that the information he used to determine job numbers was based on data from the DOT and BLS, and he reduced the positions "given the combination of limitations that would allow the person to perform – be able to perform the essential job functions of those job titles." Doc. 27 at 39 (citing Tr. 66-67). The Commissioner asserts Plaintiff failed to show the VE's testimony was unreliable given it was based on DOT and BLS data, and the numbers were reduced by the VE based on his experience. *Id.* Further, the Commissioner claims that even accepting Plaintiff's argument that the number of jobs should be reduced, Plaintiff fails to establish that applying the necessary reductions would render the numbers insufficient. *Id.* at 40. The Commissioner also contends Plaintiff failed to show the VE had to consider Job Browser Pro numbers. *Id.* at 40-41. The Commissioner further posits that Plaintiff's reliance on Job Browser Pro is inappropriate because such information was not in the record before the

Commissioner, and Plaintiff is not requesting a remand under sentence six of 42 U.S.C. § 405(g).   *Id.* at 41.

The VE testified there were over 400,000 cafeteria attendant jobs, over 470,000 counter attendant jobs and over 230,000 information clerk jobs in the national economy.   Tr. 64-65.   Plaintiff's counsel cross-examined the VE:

| | |
|---|---|
| ATTY: | In terms of your numbers, Mr. Thompson, can you tell me what are your sources for your numbers? |
| VE: | The Bureau of Labor Statistics. |
| ATTY: | Do you use any of the programs like Job Browser Pro or anything like that? |
| VE: | I use that to identify DOT codes but not to get the numbers. |
| ATTY: | And are your numbers taken just from the BLS? |
| ... | |
| VE: | Generally yes I get only numbers from the Bureau of Labor Statistics.   The information [INAUDIBLE] I believe is – with the BLS is attached to a receptionist position so those numbers have been reduced. |
| ATTY: | And that was my next question I guess.   Is there any reduction in the numbers that you have given for the limitations set forth in the hypothetical or are these the total numbers for those positions? |
| VE: | Those are the total numbers for these – for those positions – |
| ATTY: | Okay. |
| VE: | – given the combination of limitations that would allow the person to perform – be able to perform the essential job functions of those job titles. |

Tr. 66-67.   Having only the above transcription to evaluate what happened at the hearing, it is difficult to determine whether the VE reduced the numbers to account for part-time positions and positions outside of Plaintiff's RFC.   It is unclear whether the "total numbers" the VE referenced relate to individual DOT codes or OES groups, and it is unclear whether the VE *reduced* the numbers to account for Plaintiff's limitations or if he means he identified certain positions based on Plaintiff's

limitations. *Id.* Because it is unclear whether the VE appropriately reduced the job numbers and because the Court recommends the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT, the Court recommends substantial evidence does not support the ALJ's step five determination.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.     The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

   a.  Re-evaluate whether there is other work available in significant numbers that Plaintiff can perform given his Residual Functional Capacity, identifying and resolving any apparent conflicts between the testimony of a vocational expert and the DOT; and

   b.  Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.     The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff John Saffioti, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 7th day of January, 2019.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record

- 23 -